UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAST BRAND, INC.,

Plaintiff,

v.

DECKERS OUTDOOR CORPORATION,

Defendant.

Case No. 26-cv-01540-SVK

**ORDER ON MOTION TO DISMISS**

Re: Dkt. No. 19

Plaintiff Last Brand, Inc., d/b/a Quince ("Quince") is an online retailer. Dkt. 1 ¶ 22. Defendant Deckers Outdoor Corporation ("Deckers") owns the UGG brand and distributes UGG-branded products globally, including sheepskin and shearling-lined boots and other footwear of various designs. *Id.* ¶¶ 23, 144-145. Quince alleges that it "competes directly with Deckers in the Sheepskin Casual Footwear Market by offering quality sheepskin and shearling-lined casual footwear to U.S. consumers at value-oriented price points." *Id.* ¶ 22. Quince's complaint in this case asserts a claim for attempted monopolization under section 2 of the Sherman Act based on Deckers' alleged use of "hundreds of sham trade dress lawsuits asserting unprotectable, unregistered product-design trade dresses as an exclusionary weapon to block competitors and maintain its dominance" in the Sheepskin Casual Footwear Market in the United States. *Id.* ¶ 1; *see also id.* ¶¶ 167-175.

All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 9, 18.

Now before the Court is Deckers' motion to dismiss. Dkt. 19. The Court has evaluated the Parties' briefs as well as the case file and relevant law and determines that the motion may be resolved without oral argument. Civ. L.R. 7-1(b). For the reasons that follow, Deckers' motion to dismiss is **GRANTED** and the complaint is **DISMISSED WITH LEAVE TO AMEND**.

United States District Court
Northern District of California

## I. BACKGROUND

The complaint alleges that "Deckers uses the decades-old 'Classic' boot as the brand's anchor and carries that reputation into lawsuits about different, later-released products." Dkt. 1 ¶ 27. The complaint discusses litigation from 2008-2010 regarding Deckers' "foundational boot designs," which Quince alleges "set up the later shift to Bailey Button as a repeatable enforcement asset." *Id.* ¶¶ 46-50. The complaint divides the subsequent Deckers intellectual property "enforcement playbook" as to the "Bailey Button campaign" into "three distinct phases" (*id.* ¶ 51):

- **Phase 1 (2010-2013)**: Quince alleges that during this time period, Deckers filed at least 21 enforcement actions concerning its Bailey Boot designs, which asserted only claims for infringement of Deckers' design patents. *Id.* ¶¶ 52-56, 105. Quince alleges that Deckers pivoted away from this patent-only strategy shortly after December 23, 2013, when a court denied Deckers' motion to dismiss a counterclaim seeking a declaratory judgment that two Deckers design patents were invalid in *Deckers v. Rue Services Corp.*, C.D. Cal. Case No. 2:13-cv-06303-JVS. *Id.* ¶¶ 57-60. The complaint refers to this at the "*Rue21*" ruling.
- **Phase 2 (December 2013 to October 2014):** Quince alleges that Deckers filed its first Bailey Button trade dress complaint on January 8, 2014. *Id.* ¶ 59. The complaint does not explain the October 2014 end date of the alleged "Phase 2." *See id.*¶¶ 57-60.
- **Phase 3 (2014-present):** Quince alleges that within weeks of the *Rue21* patent ruling and the filing of the first Bailey Button trade dress action, Deckers filed "ten additional complaints using identical Bailey Button trade dress language." *Id.* ¶ 61. Quince further alleges that "[w]ithin five years of the *Rue21* denial, Deckers rolled out a standardized template across approximately 100 lawsuits as to the Bailey Button design alone." *Id.* ¶ 62. The complaint alleges that "Deckers filed new trade dress claims for Bailey Button as recently as May 2025." *Id.* ¶ 65. Elsewhere, the complaint alleges that in the three-year period from 2013 through 2016, Deckers filed 54 actions asserting unregistered trade

dress. *Id.* ¶ 105.

The complaint also alleges enforcement efforts beyond the "three distinct phases" of the Bailey Button campaign, which covered other time periods and products. *Id.* ¶¶ 66-73.

Among the many Deckers lawsuits mentioned in the complaint is one filed in this District, *Deckers v. Last Brand, Inc.*, N.D. Cal. Case. No. 23-cv-04850-AMO. *See id.* ¶ 9. The complaint refers to this as the "*Quince* Action," and this Order will refer to it as *Deckers v. Quince.* The complaint places significant emphasis on the October 2, 2025, order in *Deckers v. Quince* that "held, on Quince's motion for partial summary judgment, that the asserted Tasman Trade Dress and Classic Ultra Mini Trade Dress are generic and unprotectable." *Id.* ¶ 98; *see also id.* ¶¶ 9, 10, 42, 73, 115, 117, 118.[1] Quince alleges that after that ruling, "Deckers filed new actions asserting the exact five-feature Tasman definition the [*Deckers v. Quince*] Action held generic and unprotectable and sought injunctive relief on that basis" and that "Deckers has filed at least forty such pleadings." *Id.* ¶ 73.

On February 20, 2026, Quince filed the complaint in this case, which contains a single cause of action for attempted monopolization in violation of the Sherman Antitrust Act, 15 U.S.C. § 2. Dkt. 1.

## II. REQUESTS FOR JUDICIAL NOTICE

In support of the motion to dismiss, Deckers filed a request for judicial notice asking the Court to take notice of court records from other federal lawsuits. Dkt. 20 ("Deckers RJN"). Together with Quince's opposition to the motion to dismiss, Quince also filed a request for judicial notice asking the Court to take judicial notice of court records, as well as excerpts from the Trademark Status & Document Retrieval ("TSDR") database maintained by the United States Patent and Trademark Office ("USPTO"). Dkt. 27 ("Quince RJN").

Federal Rule of Evidence 201(b) allows a court to "judicially notice a fact that is not

[1] The October 2, 2025, Order re Motions for Summary Judgment in *Deckers v. Quince* denied Deckers' motion for summary judgment on its federal and state trade dress infringement claims, finding that Deckers had failed to carry its burden of showing there to be no genuine issues for trial on the issues of utilitarian functionality and aesthetic functionality. Dkt 1-3 at 5-6. The court granted Quince's motion for summary judgment on its genericness defenses against the trade dress infringement claims. *Id.* at 8. The court denied Quince's motion for summary judgment on Deckers' claim for infringement of its design patent. *Id.* at 10.

subject to reasonable dispute because it: (1) is generally known within the court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Courts may properly take judicial notice of undisputed matters of public record, including documents on file in federal or state courts. *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1131-32 (9th Cir. 2012). Documents from the USPTO TSDR database are also the proper subject of judicial notice. *EVO Brands, LLC v. Al Khalifa Group LLC*, 657 F. Supp. 3d 1312, 1321 (C.D. Cal. 2023)

Accordingly, the Deckers RJN and Quince RJN are **GRANTED.** Although the Court takes judicial notice of the existence and contents of the documents at issue, it will not take judicial notice of the underlying truth of any factual assertions therein.

The Court **ORDERS** that in any future filings in this litigation, any citation to a document included in the Deckers RJN or the Quince RJN must indicate that the Court has already taken judicial notice of the document in this Order. The Parties shall not submit new requests for judicial notice of such documents.

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This

"facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

## IV. DISCUSSION

### A. *Noerr-Pennington* Doctrine

Deckers moves to dismiss the complaint on the basis that the challenged conduct (Deckers' litigation activity) constitutes petitioning activity under the First Amendment that is immunized from antitrust liability by the *Noerr-Pennington* doctrine. Dkt. 19 at 3. The *Noerr-Pennington* doctrine "is a rule of statutory construction that requires courts to construe statutes to avoid burdening conduct that implicates the protections of the Petition Clause of the First Amendment." *Relevant Grp., LLC v. Nourmand*, 116 F.4th 917, 927 (9th Cir. 2024) (citation omitted). The Petition Clause protects "the right of the people ... to petition the government for a redress of grievances." *Id.* (citation omitted); *see also* U.S. Const. Amend. I.

"Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Relevant*, 116 F.4th at 927 (citation omitted). The Ninth Circuit has extended *Noerr-Pennington* protection to lawsuits, noting that the doctrine "overprotects baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution." *Id.* at 927-28 (citation omitted).

However, neither the Petition Clause nor the *Noerr-Pennington* doctrine protects sham litigation. *Id.* (citation omitted). The Ninth Circuit has identified three circumstances in which the sham litigation exception to *Noerr-Pennington* immunity might apply. *Id.* The first is "where the lawsuit is objectively baseless and the defendant's motive in bringing it was unlawful." *Id.* (citing *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 54 (1993) ("*PREI*")). The second is where the conduct involves a series of lawsuits "brought pursuant to a policy of starting legal proceedings without regard to the merits" and for an unlawful purpose. *Relevant*, 116 F.4th

at 928 (quoting *USS–POSCO Indus. v. Contra Costa Cnty. Bldg. & Constr. Trades Council*, 31 F.3d 800, 810–11 (9th Cir. 1994) ("*POSCO*")). Cases in the Ninth Circuit often refer to the first and second sham litigation exceptions as the *PREI* and *POSCO* frameworks, respectively. *See, e.g., Relevant*, 116 F.4th at 928. In the third situation, which is not at issue in this case, "if the allegedly unlawful conduct consists of making intentional misrepresentations to the court, litigation can be deemed a sham if a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Id.* (internal quotation marks and citations omitted).

**1. Quince's motion to strike or for leave to file a sur-reply**

Before turning to the merits of the present motion to dismiss, the Court addresses Quince's motion to strike arguments in Deckers' reply brief or, in the alternative, for leave to file a sur-reply. Dkt. 29. This entails an overview of how Quince's allegations have evolved during this litigation.

Quince bases the antitrust claim in its complaint on Deckers' alleged use of "hundreds of sham trade dress lawsuits asserting unprotectable, unregistered product-design trade dresses as an exclusionary weapon to block competitors and maintain its dominance in the United States market for sheepskin- and shearling-lined casual footwear ('Sheepskin Casual Footwear Market')." Dkt. 1 ¶ 1. According to Quince, this alleged "trade dress enforcement campaign" (*id.* ¶ 23) included the case Deckers brought against Quince in this District (*Deckers v. Quince*) and numerous cases Deckers has filed against other companies. *See, e.g.,* Dkt. 1 ¶¶ 9, 46-73

The Ninth Circuit requires a plaintiff who seeks to establish the sham exception to *Noerr-Pennington* to plead around the *Noerr-Pennington* defense. *Gamble v. Kaiser Found. Health Plan, Inc.*, 348 F. Supp. 3d 1003, 1028 (N.D. Cal. 2018) (citing *Boone v. Redevelopment Agency of City of San Jose*, 841 F.2d 886, 894 (9th Cir. 1988) and *Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005)). In apparent recognition of this requirement, Quince includes in the complaint a section entitled "SHAM PETITIONING." *Id.* at section IV. The terminology in that section of the complaint corresponds to the first type of sham litigation exception to *Noerr-Pennington*, *i.e.*, the *PREI* exception for single-suit sham litigation.

Specifically, Quince groups the allegations in this section of the complaint into two subsections: "Objective Baselessness" and "Subjective Intent." *Id.*at pp. 28-30; *see also id.* ¶¶ 101 ("Litigation is sham where it is objectively baseless and pursued with subjective intent to use the process itself, rather than a favorable outcome, to interfere with competitors"). This is the same terminology used in *PREI*. *See PREI*, 508 U.S. at 59-60.

The *Noerr-Pennington* arguments in Deckers' opening brief on its motion to dismiss focuses on the *PREI* framework for single-suit sham litigation. Dkt. 19 at 6-11. Deckers notes in a footnote that "[t]he Ninth Circuit also has recognized that the sham litigation exception might apply" in the context of a series of lawsuits but argued that "Quince cannot show that Deckers' litigation actions taken to enforce its intellectual property rights have been brought without regard to the merits or for an improper purpose." *Id.* at 6-7 n.4.

In its opposition to the motion to dismiss, Quince faults Deckers for "misapply[ing] the single-suit test to a pattern-of-litigation claim." Dkt. 26 at 5. Quince's opposition brief recognizes the three circumstances in which the Ninth Circuit has found the sham exception strips *Noerr-Pennington* immunity, including the *PREI* and *POSCO* tests. *Id.* at 5-6. According to Quince, the complaint in this case "invokes the second trigger," *i.e.,* the *POSCO* series-of-lawsuits framework. *Id.* at 5. Quince's opposition brief primarily addresses the *POSCO* framework (*id.* at 5-8) but also argues that "[t]he Complaint plausibly alleges objective baselessness even under *PREI's* stricter single-suit test" (*id.* at 9).

Deckers's reply in support of the motion to dismiss similarly addresses both the *PREI* and *POSCO* frameworks. *See* Dkt. 28 at 2-9.

Following the filing of Decker's reply, Quince filed a motion to strike new arguments in Deckers' reply or, in the alternative, for leave to file a sur-reply. Dkt. 29. Quince argues that "Deckers knew the sham series standard was in play" but in its opening motion "chose to address the pattern-of-litigation standard in a single footnote 4." *Id.* at 3. Quince asks the Court to strike or allow Quince to file a sur-reply responding to arguments in Deckers' reply brief concerning whether the series-of-litigation standard is met. *Id.* Quince's motion also asks the Court to strike or allow it to respond to an argument in Deckers' reply brief concerning an allegation in the

complaint regarding how many pleadings Deckers had filed on a particular issue. *Id.* at 3 (citing Dkt. 28 at 1). The cited argument in Deckers' reply brief asserts that the calculation in the complaint was "an effort to manufacture serial litigation where none exists." Dkt. 28 at 1. Thus, Quince's motion to strike/file a sur-reply arises from Deckers' arguments in its reply brief regarding whether the complaint states the elements of the *POSCO* test for sham litigant.

As is evident from this discussion, the Parties' briefs on the present motion to dismiss somewhat talk past each other with regard to whether this case should be evaluated under *PREI* or *POSCO*. The fault for this situation lies primarily with Quince. A complaint need only give the defendant fair notice and "need not pin plaintiff's claim for relief to a precise legal theory." *Skinnner v. Switzer*, 562 U.S. 521, 530 (2011); Fed. R. Civ. P. 8(a)(2). Here, however, the complaint uses the same "objectively baseless" and "subjective intent" terminology as the *PREI* theory. *Compare* Dkt. 1 at pp. 28-30 and ¶ 101 *with PREI*, 508 U.S. at 59-60. Therefore, it is not a situation where Quince simply did not label the precise legal theory it invoked; instead, Quince appears to invoke a particular legal theory (*PREI*) in the complaint. Yet in its opposition to motion to dismiss, Quince argues that the allegations of the complaint "allege[] exactly that pattern" set forth in *POSCO* and "map onto" the first element of *POSCO*, which is a different theory. Dkt. 26 at 6. That Quince's allegations using *PREI* terminology could be read to match the "pattern" of or "map onto" the *POSCO* theory does not mean that it is clear from the complaint that Quince was trying to plead that the *POSCO* exception applies. Under these circumstances, Deckers' decision to focus on the *PREI* framework in its opening brief on the motion to dismiss is understandable. It is also understandable that once Quince argued in its opposition brief that this in fact is a "pattern-of-litigation" case, Deckers would include arguments under the *POSCO* standard in its reply brief.

"Parties do not have the right to file sur[-]replies and ... [t]he Court generally views motions for leave to file a sur[-]reply with disfavor." *Van Hees v. BAM Trading Serv., Inc.*, No. 25-CV-05685-JST, 2025 WL 3026497, at *1 (N.D. Cal. Oct. 29, 2025) (alteration in original; citation omitted). The court may exercise its discretion not to allow a sur-reply where the reply brief includes only arguments that were raised in response to the opposition brief or iterations of

the positions the party took in its opening brief. *Id.; see also In re Hard Drive Suspension Assemblies Antitrust Litig.,* No. 19-MD-02918-MMC, 2023 WL 1934491, at *1 (N.D. Cal. Jan. 6, 2023).

Accordingly, Quince's motion to strike or, in the alternative, for leave to file a sur-reply is **DENIED**. Quince is not prejudiced by this decision because, for the reasons discussed below, Quince will have an opportunity to amend the complaint to clarify its legal theory and to address the other deficiencies identified in this Order. Quince may include the arguments in its proposed sur-reply in briefing motions on the forthcoming amended complaint if warranted.

**2. *POSCO* series-of-lawsuits framework**

Because Quince now insists that this case is a "pattern-of-litigation claim" that falls within the *POSCO* exception to *Noerr-Pennington* immunity (Dkt. 26 at 5), the Court begins by analyzing whether the complaint adequately pleads that exception. The *POSCO* exception applies "where the conduct involves a series of lawsuits 'brought pursuant to a policy of starting legal proceedings without regard to the merits' and for an unlawful purpose." *Sosa*, 437 F.3d at 938 (citing *USS-POSCO Indus. v. Contra Costa County Bldg. & Constr. Trades Council*, 31 F.3d 800, 810-11 (9th Cir. 1994)). "When dealing with a series of lawsuits, the question is not whether any one of them has merit ... but whether they are brought pursuant to a policy of starting legal proceedings without regard to the merits and for the purpose of injuring a market rival." *POSCO*, 31 F.3d at 811. To determine whether the *POSCO* exception applies, courts ask: "Were the legal filings made, not out of a genuine interest in redressing grievances, but as part of a pattern or practice of successive filings undertaken essentially for purposes of harassment?" *Id.* "To answer this question, courts often look to the number of actions filed and the success of those actions." *AliveCor, Inc. v. Apple Inc.*, No. 21-CV-03958-JSW, 2023 WL 9181478, at *3 (N.D. Cal. June 30, 2023) (citation omitted).

Because the complaint appears to be framed in terms of the *PREI* single-suit exception to *Noerr-Pennington* immunity, it is unclear whether the allegations plead a plausible exception under *POSCO*. An overarching problem is that the complaint fails to explain which of the many lawsuits and pleadings identified in the complaint are the "series of lawsuits" upon which Quince

bases its *POSCO* theory. Are the early patent-only actions discussed in the complaint (*see* Ex. 1 ¶¶ 52-56) part of the accused "series," or are those lawsuits discussed only to give context? Is the "series" limited to lawsuits filed after the court's October 2, 2025, summary judgment order in *Deckers v. Quince* (*see id.* ¶ 99), or does it also include the lawsuits involving trade dress claims that were filed before that order (*see id.* ¶¶ 59, 61-65)? Are the cases involving slippers, slides, or various other designs included (*see id.* ¶¶ 66-73)? Is *Deckers v. Quince* itself part of the "series"? Is Quince counting "separate pleadings" within lawsuits (*see id.* ¶ 3) or only entire lawsuits? The vague and adjective-laden language used throughout the section of the complaint on objective baselessness—such as "unregistered product-design trade dress claims," "brand-level promotion and ubiquitous construction descriptors," "brand-fame narratives and generalized promotion allegations," "developed-record protectability adjudications," "template complaints", and "hundreds of cases" (*see id.* ¶¶ 102-108)—obscures rather than clarifies Quince's legal theory.

It is important to understand which and how many lawsuits or other events are part of the "series-of-lawsuits" alleged by Quince because, as the Ninth Circuit explained in *Relevant*, it has applied the *PREI* framework where a single sham lawsuit or a "small number" of such suits are at issue and it had applied *POSCO* where a "series" of lawsuits is at issue. 116 F.4th at 929 (citations omitted). In *Relevant*, the Ninth Circuit applied *PREI* rather than *POSCO* where the case "only involve[d] four actions resembling 'lawsuits' in the traditional sense," contrasting the case with *POSCO*, which involved twenty-nine lawsuits. *Id.* at 931. As highlighted by Deckers' reply brief and Quince's motion for leave to file a sur-reply, there are potentially also issues concerning whether lawsuits against companies other than Quince and lawsuits concerning different products "count" for purposes of applying the series-of-litigation test. *See* Dkt. 28 at 1-8; Dkt. 29 at 3.

Of course, determining which lawsuits or proceedings are part of the "series of lawsuits" is only the starting point. To plead an exception under *POSCO*, Quince must also plead facts plausibly alleging that Deckers brought the relevant proceedings without regard to the merits and for an unlawful purpose. *Sosa*, 437 F.3d at 938; *POSCO*, 31 F.3d at 811. To assess whether these elements are alleged sufficiently, Quince must make clear which proceedings form the basis of its

sham litigation theory.

Because the complaint does not clearly assert that the *POSCO* sham litigation exception to the *Noerr-Pennington* doctrine applies and because of the mismatch in the Parties' briefing on the motion to dismiss discussed above, the Court will not at this time consider whether the complaint plausibly states a claim under the *POSCO* framework. *See Temple of 1001 Buddhas v. City of Fremont*, 562 F. Supp. 3d 408, 424-25 (N.D. Cal. 2021) (declining to consider theory advanced in plaintiff's opposition to motion to dismiss that was different than theory alleged in complaint); *Stationary Eng'rs Loc. 39 Health & Welfare Tr. Fund v. Philip Morris, Inc.*, No. C-97-01519 DLJ, 1998 WL 476265, at *10–11 (N.D. Cal. Apr. 30, 1998) (granting plaintiffs leave to file amended complaint to allege theory argued in opposition to motion to dismiss that "does not parallel the allegations actually appearing" in the operative complaint).

In its opposition to the motion to dismiss, Quince argues that the complaint "alleges exactly that pattern" set forth in *POSCO* and "map[s] onto" *POSCO's* "without regard to the merits" element. Dkt. 26 at 6. The Court cannot conclude based on the present record that Quince would be unable to allege facts supporting a *POSCO* sham litigation exception to the *Noerr-Pennington* doctrine, and therefore the Court will dismiss the complaint with leave to amend so that Quince may attempt to clarify its legal theory. The Court reminds Quince of its obligation to include in the amended complaint "a short and plain statement of the claim showing that [Quince] is entitled to relief." Fed. R. Civ. P. 8(a)(2). All of the arguments presented by the Parties as to that theory, including the arguments in Quince's proposed sur-reply, are preserved and may be made with respect to the amended complaint if warranted.

### 3. *PREI* single-suit framework

As discussed above, Quince attempts to plead around *Noerr-Pennington* immunity by including a section in the complaint entitled "Sham Petitioning" with subsections for objective baselessness and subjective intent. *Id.* ¶¶ 101-115.[2] That terminology is from *PREI* and could be construed as an effort by Quince to invoke the first type of sham litigation exception under the

[2] The numbering of the headings and subheadings in the complaint is difficult to follow. For example, the "Sham Petitioning" section is numbered "VI." (*i.e.,* Roman numeral 6) but the first subsection in that section is numbered "G," not A. Dkt. 1 at 28.

*Noerr-Pennington* doctrine: the exception for where a lawsuit was "objectively baseless and the defendant's motive in bringing it was unlawful" as set forth in *PREI*. *See Relevant*, 116 F.4th at 928. As also discussed above, Quince now instead appears to embrace the *POSCO* series-of-lawsuits theory. *See, e.g.,* Dkt. 26 at 5 (asserting that "[t]he Complaint invokes the second trigger," *i.e.,* the *POSCO* series-of-lawsuits exception to *Noerr-Pennington* immunity). Quince nevertheless argues in opposition to the motion to dismiss that the complaint also satisfies "*PREI*'s stricter single-suit test" and devotes a significant portion of its opposition brief to that theory. Dkt. 26 at 9-14. Thus, the Court considers whether the complaint plausibly pleads the *PREI* exception.

As a preliminary matter, and similar to the discussion above, the Court cannot readily evaluate the sufficiency of the complaint under *PREI* because the complaint is unclear as to *which* lawsuits or other filings (among the many discussed in the complaint) Quince is alleging are objectively baseless. It appears that Quince's sham litigation allegation is based on Deckers' trade dress litigation. *See, e.g.,* Dkt. 1¶ 102 ("Deckers lacked probable cause to believe its unregistered product-design trade dress claims could succeed on a developed record."); *see also id.* ¶¶ 116-142 (setting forth seven "exemplar matters" that "illustrate the mechanics of Deckers' sham litigation program" as well as conclusions regarding "pattern and inference"). *Id.* ¶¶ 116-142. Again, however, it is unclear whether Quince's sham contention is premised only on trade dress lawsuits filed after the court's October 2, 2025, summary judgment order in *Deckers v. Quince* (*see id.* ¶ 99) or if it also includes trade dress lawsuits filed before that order (*see id.* ¶¶ 59, 61-65). It is also unclear whether Quince alleges that *Deckers v. Quince* itself was objectively baseless.

Whether *PREI's* single-suit framework applies to the "litigation program" alleged by Quince depends at least in part on how many proceedings are involved. As explained in *Relevant* and discussed above, "cases originally referred to *PREI* as the test to apply when a 'single' suit is at issue," but "subsequent cases have described *PREI* as the test to use when there is 'a single sham lawsuit (or *a small number of such suits*).'" 116 F.4th at 929 (citations omitted; emphasis in original). The Ninth Circuit also explained that "[s]imilarly, we have never defined what number constitutes a 'series' of lawsuits in *POSCO.*" *Id.* (citation omitted).

Because of Quince's threshold failure to adequately identify which lawsuits or other events

it contends were objectively baseless, and because the Court is giving Quince leave to amend the complaint, the Court will not further analyze the *PREI* factors in the context of the present complaint. The Parties may make their arguments regarding the sufficiency with which Quince attempts to plead a sham litigation exception under *PREI* in the amended complaint if warranted.

**B. Antitrust injury and standing**

Deckers argues that the complaint should be dismissed because Quince has failed to allege antitrust injury and standing. Dkt. 19 at 11-15. "It is well established that the antitrust laws are only intended to preserve competition for the benefit of consumers." *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1999). Thus, private party plaintiffs seeking damages for antitrust violations must also demonstrate antitrust injury. *Rebel Oil Co. v. Atl. Richfield Co.,* 51 F.3d 1421, 1433 (9th Cir. 1995).

The Ninth Circuit has repeatedly held that "antitrust injury consists of four elements: '(1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust laws were intended to prevent.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (citation omitted); *see also Am. Ad.*, 190 F.3d at 1056 (noting that "[i]t is not enough that the plaintiff's claimed injury flows from the unlawful conduct[;] [a]n antitrust injury must 'flow[ ] from that which makes defendants' acts unlawful'"). In *Somers*, the Ninth Circuit added that it has also "imposed a fifth element – that 'the injured party be a participant in the same market as the alleged malefactors,' meaning 'the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market.'" *Somers*, 729 F.3d at 963; *see also Intel Corp. v. Fortress Inv. Grp.* LLC, No. 19-CV-07651-EMC, 2020 WL 6390499, at *11 (N.D. Cal. July 15, 2020).

Quince's arguments in opposition to the motion to dismiss make clear that the alleged "unlawful conduct" underpinning its claims of antitrust injury and standing is Deckers' filing of sham litigation. *See* Dkt. 26 at 15-16; *see also, e.g.,* Dkt. 1 ¶¶ 154-158, 172-173. For the reasons discussed above, the present complaint does not adequately identify which of the many lawsuits identified in the complaint Quince claims is a sham. Quince will have an opportunity to amend

the complaint to address that and other deficiencies noted in this Order. Under these circumstances, where the present complaint does not overcome *Noerr-Pennington* immunity but will be amended, the Court will not rule on whether the present complaint adequately alleges antitrust injury and standing. The Parties may make their arguments on those issues in connection with a motion directed to the forthcoming amended complaint if warranted.

**C. Failure to state a claim for attempted monopolization**

Deckers argues that Quince has failed to adequately plead all elements of a claim for attempted monopolization. Dkt. 19 at 15-23. For the reasons discussed above, Quince has not adequately pleaded a sham litigation exception to *Noerr-Pennington* immunity, but even if it had, "[p]roof of a sham merely deprives the defendant of immunity; it does not relieve the plaintiff of the obligation to establish all other elements of his claim." *PREI*, 508 U.S. at 611; *see also United Tactical Sys., LLC v. Real Action Paintball, Inc.*, No. 14-CV-04050-MEJ, 2016 WL 524761, at *4 (N.D. Cal. Feb. 10, 2016).

"Section 2 of the Sherman Act makes it unlawful to monopolize, or attempt to monopolize, . . . any part of the trade or commerce among the several States." *Pac. Bell Telephone Co. v. linkLine Communs., Inc.,* 555 U.S. 438, 447 (2008) (internal citations omitted); 15 U.S.C. § 2. To prove attempted monopolization, a plaintiff must show "'(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Cascade Health Solutions v. PeaceHealth,* 515 F.3d 883, 893 (9th Cir. 2008) (quoting *Spectrum Sports, Inc. v. McQuillan,* 506 U.S. 447, 456 (1993)).

Deckers argues that Quince has failed to allege a plausible claim for attempted monopolization because: (1) Quince does not allege anticompetitive conduct subject to the Sherman Act; (2) Quince defines the market too narrowly and thus does not allege a dangerous probability of achieving market power; and (3) Quince fails to allege a specific intent to monopolize. Dkt. 19 at 15-23. It is apparent from the Parties' briefing on the motion to dismiss that these issues overlap with the question of whether Quince has antitrust standing or injury and the issue of Deckers' intent in filing the underlying enforcement litigation that is the subject of this

action. *See, e.g.,* Dkt. 19 at 16, 22-23; Dkt. 26 at 19-25. Under these circumstances, where the present complaint does not overcome *Noerr-Pennington* immunity but will be amended, the Court will not rule on whether the present complaint adequately alleges the elements of a claim for attempted monopolization. The Parties may make their arguments on those issues in connection with a motion directed to the forthcoming amended complaint if warranted.

## V. CONCLUSION

For the reasons discussed above, the complaint as presently drafted does not state facts sufficient to demonstrate a sham litigation exception to *Noerr-Pennington* immunity under either the *PREI* or *POSCO* frameworks. Deckers' other grounds for seeking dismissal of the complaint overlap with considerations relevant to establishing the sham litigation exception. From the present record, it is not clear that granting leave to amend to attempt would be futile. Accordingly, Deckers' motion to dismiss is **GRANTED** and the complaint is **DISMISSED WITH LEAVE TO AMEND.** Quince's amended complaint is due by **September 17, 2026.**

**SO ORDERED.**

Dated: August 27, 2026

SUSAN VAN KEULEN
United States Magistrate Judge